REQUESTED BY: Senator James E. Goll Nebraska State Legislature State Capitol Lincoln, NE 68509
Dear Senator Goll:
This is in reply to your inquiry concerning the constitutionality of a proposed bill relating to guardianships which you state you are considering introducing in the 1983 Legislative Session.
You have asked for our opinion as to the constitutionality of the proposal.
It is a well established rule of construction, stated by the Supreme Court of Nebraska in Anderson v. Carlson,171 Neb. 741, 107 N.W.2d 535 (1961) that: `The constitutionality of a law is to be tested by what the act authorizes and what may be accomplished by it.' Stated another way, `the constitutionality of a legislative act is determined, not from what has been done under it, but from what may be done under it.' State v. Cavitt, 182 Neb. 712,157 N.W.2d 171 (1968).
Your proposed bill under Section 1, would authorize the appointment of a temporary guardian for a person 18 or more years of age who has undergone `a substantial behavioral change' and `lacks substantial capacity to make independent and informed decisions' if: It could reasonably be expected to result from exposure to a systematic course of coercive persuasion which undermines a person's capacity to make informed or independent judgments, and the person conducting the course of persuasion regularly and systematically commits deceitful acts with respect to the nature of the activities in which one will participate with the person, and the deceitful acts could reasonably be expected to have mislead the person on whom practiced regarding the nature of the activities.
The foregoing paragraph is a summation of only a part of the alternatives authorized by the act for the appointment of a guardian over a person 18 years of age or older.
Under Section 2 of the proposal, if a temporary guardian is appointed, a plan shall be established which must be under the supervision of a licensed psychologist, a psychiatrist or social worker with at least three years clinical experience in an area of mental health. The order could be in force for a total period of 75 days. There is no question but that the liberty of the person under the order may be infringed.
Section 3 provides that in determining whether a person has undergone a substantial behavioral change which would warrant the appointment of a guardian, the court may consider, among others:
(a) Abrupt and drastic alteration of basic values and lifestyle;
(b) Blunted emotional responses;
(c) Regression to child-like levels of behavior;
(d) Physical changes, including, drastic weight change, cessation of menstruation, diminished rate of facial hair growth, and cessation of perspiration.
In determining whether a systematic course of coercive persuasion exists which would warrant the appointment of a guardian under the act, the court may consider, among others:
(1) Isolation from family and friends;
(2) Control over information and channels of communication;
(3) Physical debilitation through such means as sleep deprivation, inadequate diet, unreasonably long work hours, or inadequate medical care.
While the act undoubtedly encompasses the circumstances which you desire to control and remedy by this legislation, which we have no doubt, are prompted by laudable motives, that is not the test; the language is so broad that it could be construed to authorize the limitation of other activities and callings, which, although they may not accord with the views of the majority, may nevertheless be recognized as activities which are proper to engage in without interference under the recognized freedoms under our state and federal Constitutions.
For example, there are undoubtedly many religious groups whose practices could be found by a county court to come within the broad language of your proposal authorizing the appointment of a guardian over an adult member of one of such religious groups.
In Meyer v. Nebraska, the United States Supreme Court was called upon to examine legislation which prohibited the teaching in a private, parochial or public school any subject in any language other than English and permitted the teaching of other languages than English, only after a pupil and successfully passed the eighth grade. The United States Supreme Court stated in regard thereto:
 While this court has not attempted to define with exactness the liberty thus guaranteed by the Fourteenth Amendment, the term has received much consideration, and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and, generally, to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.
Id. at 399. (Emphasis added.)
In the case of Pierce v. Society of Sisters of HolyNames, 268 U.S. 510 (1924) the Supreme Court of the United States was called upon to examine a compulsory attendance law of Oregon, which required every child between the ages of 8 and 16 years to attend a public school for the period of time held during the current year.
Some of the religious organizations of the day, which also conducted schools, brought an action to test the constitutionality of the act. While the court recognized the power of the state to reasonably regulate all schools, it said that the state could not cause the closing or destruction of private schools which were otherwise in compliance. In arriving at this decision the court stated:
 Under the doctrine of Meyer v. Nebraska, 262 U.S. 390, 67 L.ed. 1042, 29 A.L.R. 1446, Sup.Ct.Rep. 625, we think it entirely plain that the Act of 1922 unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state.
 The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only.
Id. at 534-535. (Emphasis added.)
When the divergent views and practices are considered of each individual claiming to be worshipping God `according to the dictates of his own conscience' within such known groups in this country as the many Christian denominations, Islam, Judaism, agnostics and Buddhism, only to mention some, it is obvious that there could be a wide range of opinion and viewpoint as to whether someone lacks `substantial capacity to make independent and informed decisions' or `to understand a person's conduct' or what constitutes `coercive persuasion' or `deceitful acts' to merely highlight a few of the key words from your proposal.
There are undoubtedly other callings or practices in the field of education, recreation, leisure time, and other areas which could be said to come within the terms of said proposal which have been recognized as forms of protected liberty within the meaning of the Constitution.
Like the provision of the Fourteenth Amendment considered by the United States Supreme Court in Meyer v.Nebraska, supra, the Nebraska Constitution carries similar language in Article I, Section 3. The Supreme Court of Nebraska has likewise relied upon the authority of bothPierce v. Society of Sisters of Holy Names, supra andMeyer v. Nebraska, supra.
For the foregoing reasons, we are of the opinion that we would have difficulty defending the constitutionality of your proposal described herein.
Very truly yours, PAUL L. DOUGLAS Attorney General Mel Kammerlohr Assistant Attorney General